# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| **TIFFANY WIDNER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Case No. _____ |
| V. | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |
| **INNO4 LLC,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff Tiffany Widner ("Plaintiff" or "Ms. Widner") brings this action for relief and damages against Defendant INNO4 LLC ("INNO4" or "Defendant") based on the following allegations and causes of action:

## NATURE OF THE ACTION

1. This action to correct unlawful employment practices by Defendant INNO4 LLC arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C.A. § 2000e *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C.A. § 12101 *et seq*. Ms. Widner brings Title

VII claims that Defendant subjected her to a discriminatorily abusive work environment motivated by her gender and that she was subsequently terminated because she engaged in protected activity in the form of making internal complaints regarding her discriminatory treatment. Plaintiff further brings a claim that she was subjected to unlawful discrimination based on her status as a qualified individual with a disability, and as a person who was regarded as having a disability, in violation of the ADA. Plaintiff seeks economic damages, including back pay, front pay, and lost benefits, as well as noneconomic compensatory damages and punitive damages. Plaintiff also petitions the court for her attorneys' fees and costs of litigation, as well as injunctive and declaratory relief as appropriate.

## THE PARTIES

2. Ms. Widner is a resident of the state of Georgia. During the time of the events alleged in this complaint, she was employed at INNO4's Southeast headquarters located in Norcross, Georgia.

3. Ms. Widner is a covered person under the ADA in that at all times relevant to this lawsuit, she was an individual with a disability (i.e., she had a

physical impairment that substantially limited her in one or more major life activities) and she could perform the essential functions of her job with or without a reasonable accommodation.

4. INNO4 is a limited liability company that is subject to liability under Title VII and the ADA, in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. 42 U.S.C.A. §§ 2000e(b) and 12111(5)(A).

## PERSONAL JURISDICTION

5. INNO4 may be served with proper process through its registered agent on record with the Georgia Secretary of State: National Registered Agents Inc., at 289 S. Culver St., Lawrenceville, GA 30046.

## SUBJECT-MATTER JURISDICTION AND VENUE

6. Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

7. Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1), as Defendant resides in and conducts business in this district and division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Ms. Widner filed a charge of sex and disability discrimination against INNO4 with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 410-2022-02415, received by the EEOC on February 2, 2022.

9. Ms. Widner subsequently received a Right-to-Sue letter from the EEOC, on May 12, 2022. A copy is attached as Exhibit A.

10. Ms. Widner timely files this action within 90 days of receiving her Right-to-Sue letter.

11. All administrative remedies have been satisfied prior to the filing of this civil action.

## FACTUAL ALLEGATIONS

12. INNO4 is a Massachusetts-based technology infrastructure and services company that maintains a regional headquarters located in Norcross,

4

Georgia. The company builds data and cybersecurity infrastructure for various businesses in the Southeast and the metro Atlanta area.

13. Ms. Widner was hired by INNO4 in September 2021 to work as a technician on its team installing fiber optic equipment at the Quarterly Technology Services ("QTS") mega data center in Atlanta.

14. Ms. Widner was hired as an hourly employee, with promises that her pay and schedule would rapidly expand as she trained and built experience with the company. INNO4 let Ms. Widner know that the company's goal was to prepare its entry-level technicians for better-paying and more advanced projects in INNO4's West Coast operations.

15. The technology infrastructure industry remains male-dominated. Ms. Widner was told by coworkers that INNO4 as a matter of practice never hired females for its installation crews.

16. From the onset of Ms. Widner's employment at the QTS site, she was subjected to badgering and verbal intimidation by the lead technician on her crew, Matthew Lillibridge ("Lillibridge"). He regularly denigrated her competence, calling her "stupid" to her face, and questioned her ability to keep up with the rest

of the team.  This behavior was sharply at odds with the camaraderie he practiced with the male members of the crew.

17.    Lillibridge made remarks to Ms. Widner that she reasonably associated with stereotypes about her gender.  For example, he told Ms. Widner that she lacked the physical strength to perform various assignments and remarked in her presence that "this kind of work is not for everybody."  Ms. Widner was told by coworkers that Lillibridge often referred to her as "the bitch" or "that bitch."

18.    Lillibridge's mistreatment of Ms. Widner extended to his allocation of work responsibilities among the crew.  He limited her to more basic tasks and refused to provide her the skills training that the company portrayed as an ongoing opportunity that could lead to more lucrative assignments at INNO4.

19.    As she dealt with Lillibridge, Ms. Widner also faced ongoing health challenges.  She suffers from Crohn's disease, which is a chronic inflammatory bowel disease that causes muscle pain and fatigue, as well as a nerve disorder that creates recurrent pain in her lower extremities, including her feet.

20.    Ms. Widner's ailments affected her ability to remain standing for extended periods and sometimes required her to take occasional rest breaks.  She

advised the human resources department and Lillibridge of her health issues, to which he replied on one occasion that "it was not [his] problem", and that Ms. Widner needed to pick up her pace and get back to work.

21. Ms. Widner complained in the fall of 2021 to the project manager, Michael Lillibridge, who, unfortunately for her, is Lillibridge's father. She directly told the senior Lillibridge that she believed the hostility she was experiencing was based on her status as the only woman on the crew.

22. The project manager took no steps to address his son's behavior, and there is no indication that Michael Lillibridge reported Ms. Widner's complaints of a hostile environment to INNO4's human resources department, which should have occurred under company protocols. Matthew Lillibridge's behavior did not in any way change.

23. On December 10, 2021, Ms. Widner became disoriented and nauseated while mounting a ladder at work. When she reported she was in distress, Matthew Lillibridge disdainfully told her that he believed she was a "pill head," an epithet implying abuse of prescription drugs.

24. That same day, Ms. Widner reported the incident and Lillibridge's reaction by phone to Margaret Koetzner ("Koetzner"), the head of operations and human resources. In this conversation, Ms. Widner also described the pattern of hostile behavior by Lillibridge, including her suspicions that Lillibridge objected to a woman being on the work crew.

25. Koetzner told Ms. Widner that the company would review her allegations and that, in the interim, she needed to be medically cleared to return to work. Ms. Widner's doctor immediately diagnosed her bout of illness as a poor reaction to a change in medication, and by December 14, 2021, issued INNO4 documentation reporting the likely reason for the episode four days earlier and clearing her to return with no restrictions.

26. Rather than permit her to return to work, Koetzner told Ms. Widner that the company was continuing to investigate the incident and that, as a result, she would be placed on an unpaid leave of absence until further notice.

27. On December 21, 2021, Koetzner informed Ms. Widner that she was being terminated. No cause was given. Prior to her sudden firing, Ms. Widner had

no disciplinary history.  She had also just submitted medical documentation for her sudden illness that authorized her to resume her job at INNO4.

28.  INNO4 terminated Ms. Widner for becoming ill at work, within two weeks of her reporting discriminatory and verbally abusive behavior based on her gender.

29.  Ms. Widner's termination has caused her to lose a reliable source of income as well as experience that would have led to better-paying work in her field.  She also lost affordable health care coverage through INNO4.

## COUNT I
**(Hostile work environment motivated by sex, in violation of 42 U.S.C.A. Section 2000e-2(m))**

30.  Plaintiff incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

31.  Plaintiff experienced harassment in her workplace that she found to be severe and pervasive, and that altered the terms of her employment by creating a discriminatorily abusive working environment.

32. The work environment encountered by Plaintiff would be considered by any reasonable person in the same position to be hostile and discriminatorily abusive.

33. Plaintiff contemporaneously notified management-level personnel that she was experiencing a hostile workplace environment motivated by her sex.

34. Defendant failed to take prompt and effective action to remedy the hostile work environment Plaintiff reported.

35. The hostile environment Plaintiff encountered while employed by Defendant was motivated by her sex, in violation of 42 U.S.C.A. § 2000e-2(m).

35. As a result of a hostile work environment motivated by her sex, Plaintiff has suffered noneconomic damages, including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT II
### (Retaliation in Violation of Title VII, 42 U.S.C.A. Section 2000e-3(a))

36. Plaintiff incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

37. Plaintiff engaged in activity protected under Title VII of the Civil Rights Act of 1964 by reporting to Defendant that she was being subjected to a hostile work environment motivated by her gender.

38. Defendant subsequently terminated Plaintiff for engaging in activity protected under Title VII.

39. As a result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered monetary damages, including but not limited to back pay, front pay, and the loss of benefits; and noneconomic damages, including emotional distress, humiliation, embarrassment, and mental anguish.

40. Higher-level management officials employed by Defendant acted willfully with malice or reckless indifference to Plaintiff's federally protected rights under Title VII, and she is therefore entitled to recover punitive damages.

## COUNT III
**(Discrimination under the ADA, 42 U.S.C.A. Section 12112(a))**

41. Plaintiff incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

42. At all times relevant, Plaintiff was an individual with a disability, i.e., she had physical impairments that substantially limited one or more major life activities, 42 U.S.C.A. § 12102 (1)(A)-2(A).

43. Plaintiff was also regarded by Defendant as an individual with a disability as defined by the ADA. 42 U.S.C.A. § 12102(1)(C).

44. At the time of her employment, Plaintiff was a "qualified individual" as defined by the ADA because she was able to perform the essential functions of the job she held with or without reasonable accommodation. 42 U.S.C.A. § 12111(8).

45. Defendant perceived that Plaintiff could not adequately perform her job due to her impairments, and based on that erroneous and discriminatory view, subsequently terminated her employment in violation of 42 U.S.C.A. § 12112(a).

46. As a result of Defendant's disability-based discrimination, Plaintiff has suffered monetary damages, including but not limited to back pay, front pay, and the loss of benefits; and noneconomic damages, including emotional distress, humiliation, embarrassment, and mental anguish.

47. Higher-level management officials employed by Defendant acted willfully, with malice or reckless indifference to Plaintiff's federally protected rights under the ADA, and she is therefore entitled to recover punitive damages.

## **PRAYER FOR RELIEF**

Wherefore, based on the above stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A. Back pay, front pay, and lost benefits;

B. Compensatory damages to the extent allowed by law;

C. Punitive damages;

D. Attorneys' fees and costs of litigation;

E. Pre-judgment and post-judgment interest at the highest lawful rate; and

F. Such other equitable and monetary relief as the Court deems just and proper.

Respectfully submitted, the 10th day of June, 2022.

**HKM Employment Attorneys LLP**

*s/Artur Davis*
Artur Davis[1]
ASB-3672-D56A
2024 3rd Ave. North, Suite 307
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com
Jermaine "Jay" Walker
GA Bar No. 142044
3355 Lenox Rd. NE, Suite 705
Atlanta, GA 30326
jwalker@hkm.com
Direct: 404-301-4020
Attorneys for Plaintiff

---

[1] Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.